IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STACEY SPRECHER, : | |
| : | Case No. 20-cv-0968-JMY |
| *Plaintiff* : | |
| : | |
| v. : | |
| : | |
| SOUTHEASTERN HOME HEALTH : | |
| SERVICES OF PA, LLC, ET AL., : | |
| : | |
| *Defendants* : | |

**MEMORANDUM**

**YOUNGE, J.**                                                                                                             **July 8, 2020**

**I.      INTRODUCTION**

Plaintiff Stacey Sprecher seeks redress against Defendant Southeastern Home Health Services of PA, LLC (hereinafter, "Southeastern") for unlawful gender discrimination, hostile work environment, *quid pro quo* sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 955.  (*See* "Am. Compl.," ECF No. 5.)  Plaintiff also asserts individual liability against Defendant Roland Cleneay as an aider and abettor under the PHRA.  (*Id.*)

Presently before the Court is Defendants' Partial Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Mot.," ECF No. 10).  The Court finds this matter appropriate for resolution without oral argument.  Fed. R. Civ. P. 78; L.R. 7.1(f).  For the reasons that follow, Defendants' Motion will be granted, and Plaintiff will be given leave to file an amended complaint.

## II.     BACKGROUND

### A.     Factual Background[1]

Plaintiff began working for Southeastern in October 2011. (Am. Compl. ¶ 21.) In November 2011, Plaintiff was appointed Vice President of Business and Program Development and Vice President of Operations, a remote position. (*Id.* ¶¶ 23, 26.) Five years later, Cleneay was hired by Southeastern as its Chief Financial Officer ("CFO"). (*Id.* ¶ 24.) Within two weeks of his hire, Plaintiff met Cleneay as she attended regular meetings in the corporate office. (*Id.* ¶ 26.) Plaintiff alleges she was "subjected to regular and pervasive sexual harassment by her male superior, Cleneay[,] who had actual supervisory authority over her." (*Id.* ¶ 25.) After their initial meeting, Plaintiff exchanged communications with defendant; Cleneay asked Plaintiff for her personal cell phone and email contacts so that he can "manage communications outside of the company email." (*Id.* ¶¶ 26-27.) Cleneay called Plaintiff initially during work hours and asked Plaintiff to meet him for lunch on "numerous occasions, however Plaintiff informed him that it would not be necessary or viewed as appropriate." (*Id.* ¶¶ 28-29.)   Around November 16, 2016, after numerous phone calls and after-hours texts, Plaintiff agreed to "meet up" with Cleneay a couple of times per quarter "as it seemed harmless." (*Id.* ¶¶ 32-33.)

On November 18, 2017, during dinner together, "Cleneay informed Plaintiff that the CEO and COO were very angry with Plaintiff for having spoken frankly about compliance concerns, nonetheless, he would do his best to protect her." (*Id.* ¶¶ 41-42.) On April 28, 2018, "Plaintiff met with Cleneay [again], at his insistence, for dinner." (*Id.* ¶ 48.) When Plaintiff "pulled up next to Cleneay's car, he forced a kiss on her and pushed his hand under her skirt and between her legs." (*Id.* ¶ 51.) Plaintiff "quickly pulled away and informed him, in as diplomatic

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

a way as possible, that she did not wish to be physically touched by him." (*Id.* ¶ 52.) Later that night, "Cleneay texted Plaintiff to ask if she was 'okay' with him being physical with her and that had a hard time keeping his hands off her." (*Id.* ¶ 53.) Cleneay told Plaintiff "that he was now indispensable to her survival at the Company and that she should trust no one, except him." (*Id.* ¶ 54.) Cleneay clarified that "if she rejected his physical advances, he would cause her job to be at risk." (*Id.* ¶ 55.) On October 21, 2018, Plaintiff met Cleneay for dinner and again he made it known she required him for protection and without him, she would lose her job. (*Id.* ¶ 65.) That evening, Cleneay once again became physically aggressive with Plaintiff and was rebuffed by Plaintiff. (*Id.* ¶¶ 67-68.) Thereafter, on November 15, 2018, Cleneay texted Plaintiff "I wish I was around this weekend to see, touch, kiss you." (*Id.* ¶ 76.) Cleneay's continual sexual harassment caused physical symptoms for Plaintiff, and, on November 19, 2018 she was so stressed out that she began to vomit. (*Id.* ¶¶ 79-80.) Around January 5, 2019, Plaintiff finally told Cleneay that "she was not attracted to him sexually and that they would never have an intimate relationship." (*Id.* ¶¶ 91-92.) As a result, Cleneay "became very cool towards Plaintiff and very shortly afterwards, on January 17, 2019, Plaintiff was terminated from her employment." (*Id.* ¶ 93.) Plaintiff maintains that her "employment was terminated because she had refused Cleneay's sexual advances." (*Id.* ¶ 94.)

      **B.**    **Procedural History**

On or about July 16, 2019, Plaintiff filed sex discrimination and retaliation charges against Defendants with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission. (*Id.* ¶ 16.) On or about November 6, 2019, the U.S. Department of Justice issued Plaintiff a Notice of Right to Sue. (*Id.* ¶ 17.) On February 4,

2020, Plaintiff filed a Complaint in this Court.  (ECF No. 1.)  On May 8, 2020, Plaintiff filed her Amended Complaint, asserting the following claims for relief:

> **Count I**: "sex/gender discrimination[,]" "sexual harassment and a hostile-work environment[,]" "*quid pro quo* sexual harassment[,]" and "unlawful retaliation" in violation of Title VII, 42 U.S.C. § 2000, *et seq*. (*asserted against Southeastern Home Health Services*)
>
> **Count II**: "discrimination and retaliation" in "violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq*." (*asserted against Cleneay and Southeastern Home Health Services*)

(Am. Compl. ¶¶ 95-103.)

On May 22, 2020, Defendants filed a Partial Motion to Dismiss.  On June 5, 2020, Plaintiff filed a Response in Opposition ("Opp.," ECF No. 11-1), and Defendants replied on June 12, 2020 ("Reply," ECF No. 12).

### III. LEGAL STANDARD

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  *Id*. at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  *Id*. (quoting *Iqbal*, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "[the district court] must tak[e] note of the elements [the] plaintiff must plead to state a claim;" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679). The plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Third Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990). However, a court need not grant leave to amend when it would be an exercise in futility. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, *i.e.*, if the proposed complaint could not 'withstand a renewed motion to dismiss.' ") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)).

**IV.   DISCUSSION**

Defendants raise various arguments seeking dismissal of Plaintiff's claims for retaliation and *quid pro quo* sexual harassment, as well as dismissal of Cleneay, under Rule 12(b)(6). (*See*

Mot. at 5-9.)  Plaintiff opposes Defendants' arguments, and, in the alternative seeks leave to amend.  (*See* Opp. at 5-8.)  The Court will address each argument in turn.

      **A.**      **Individual Liability Against Defendant Cleneay Under the PHRA**

Plaintiff alleges in Count II that Cleneay violated the PHRA by way of "[t]he foregoing discrimination and retaliation[.]"  (Am. Compl. ¶ 102.)  For Plaintiff to establish a violation of the PHRA she must first show an "unlawful discriminatory practice."  43 Pa. Cons. Stat. Ann. § 955.  The statute prohibits "any employer because of [] race, color, religious creed . . . to bar or to discharge from employment such individual . . . or to otherwise discriminate against such individual . . . with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual is the best able and most competent to perform the services required."  § 955(a).  The statute further protects employees from "any person" found "to aid, abet, . . . the doing of any act declared . . . to be an unlawful discriminatory practice."  § 955(e).

As noted *infra*, the PHRA is "generally applied in accordance with Title VII," which exposes only employers to liability while exempting individual employees, however, "an individual supervisory employee can be held liable under an aiding and abetting/accomplice liability theory pursuant to § 955(e) for his own direct acts of discrimination or for his failure to take action to prevent further discrimination by an employee under supervision."  *Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren, P.C.*, 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998) (citing *Dici v. Commonwealth of Pa.*, 91 F.3d 542, 552 (3d Cir. 1996)); *see also Brzozowski v. Pa. Tpk. Comm'n*, 165 F. Supp. 3d 251, 263 (E.D. Pa. 2016).  Importantly, an individual employee may be exposed to liability under the aider and abettor provision *only* if he acts in a supervisory role because "only supervisors can share the discriminatory purpose and

intent of the employer that is required for aiding and abetting." (*Id.*) (internal quotation marks and citation omitted).  Thus, "[t]he distinction between a supervisor and a co-employee is determinative on the matter of whether a PHRA claim for aiding and abetting discrimination may be brought against an individual defendant[.]" (*Id.*)

Defendants contend that the Amended Complaint "contains no factual allegations to show that Cleneay was Plaintiff's supervisor or had supervisory authority over her.  No factual allegations exist that Cleneay had the ability to hire Plaintiff.  In fact, Plaintiff fails to allege even a single factual allegation in which Cleneay supervised Plaintiff." (Mot. at 9.)  Plaintiff responds that she can "sustain a claim of individual liability" by repeating, with emphasis, paragraph 25 in her Amended Complaint: "Plaintiff was subjected to regular and pervasive sexual harassment by her male superior, [Cleneay,] who had **actual supervisory authority over her**." (Opp. at 8 (citing Amend. Compl. ¶ 25).)  The Court agrees with Defendants.

A review of the Amended Complaint reveals that Plaintiff has not alleged sufficient facts demonstrating that Cleneay was Plaintiffs "supervisor" or acted with "supervisory authority" over her for purposes of § 995(e).  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a 12(b)(6) motion.).  Although it is alleged generally that Cleneay is the CFO of Southeastern and that he "had actual supervisory authority" over Plaintiff, the Amended Complaint is silent as to any actions in which Cleneay directly supervised her, and whether he had the authority to make any decisions affecting the terms and conditions of Plaintiff's employment, *i.e.*, the authority to hire, fire, promote, demote, discipline or transfer Plaintiff.  *See Jeannot v. Phila. Hous. Auth.*, No. 18-1977, 2018 WL 4739669 at *6 (E.D. Pa. Oct. 2, 2018) ("[B]are allegations that an individual has supervisory authority over the terms and conditions of a plaintiff's

employment are insufficient to sustain a claim of aiding and abetting liability under the PHRA."); *accord Miles v. City of Phila.*, No. 11-4040, 2013 WL 125186, at *8 (E.D. Pa. Jan. 10, 2013) ("Although she does allege that [defendants] had supervisory authority over the terms and conditions of her employment, more is required for aiding and abetting liability.") (internal quotation marks and citation omitted); *see also Kent v. Henderson*, 77 F. Supp. 2d 628, 634 (E.D. Pa. 1999) (holding that plaintiff failed to show that defendant was her supervisor as she failed to demonstrate that defendant "had the authority to hire, fire, re-assign, or demote her or set her work schedule or pay rate, or that [defendant] had the power to take tangible employment action against her or affect her daily work activities"). In sum, Plaintiff fails to allege any facts that would support her assertion that Cleneay had "actual supervisory authority" over her.

Accordingly, the Court will dismiss *without prejudice* Plaintiff's PHRA claims to the extent they are asserted against Cleneay. Leave to amend is granted.

      **B.**    **Retaliation Claim in Violation of Title VII and the PHRA**[2]

Defendants contend that "Plaintiff has failed to allege facts sufficient to demonstrate retaliation in violation of Title VII and the PHRA[.]" (Mot. at 5.) In order to state a prima facie case of retaliation, a complaint must allege that: "'(1) [plaintiff engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the

---

[2] Plaintiff brings her retaliation and *quid pro quo* sexual harassment claims, under both Title VII and the PHRA. Claims brought under these statutes are analyzed using the same legal framework; therefore, all of these claims may be analyzed together. *See Ives v. NHS Human Servs., Inc.*, No. 15-5317, 2016 WL 4039644, at *2 n.1 (E.D. Pa. July 28, 2016) ("Title VII, [and] the PHRA . . . are so similar that employment discrimination under any one of them is generally presumed to constitute employment discrimination under the other two as well." (citations omitted)); *see also Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002) (Courts . . . "generally interpret the PHRA in accord with its federal counterparts." (quotation omitted)).

employer's adverse action.'"  *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (quoting *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)).

Defendants argue that Plaintiff's retaliation claim fails because "she never engaged in a protected activity," and because she fails to identify a causal nexus between the protected activity and subsequent retaliatory action.  (Mot. at 6.)  Plaintiff counters "she was afraid to make a formal complaint to anyone other than to Cleneay himself" and that the allegations in the Amended Complaint allow for a reasonable inference that there was a causal link between her complaints to Cleneay himself and the retaliation.  (Opp. at 6.)  Again, the Court agrees with Defendants.

First, as to protected activity, our Court of Appeals has held that "the rejection of a sexual advance [is] a protected activity."  *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279, n.4 (Cir. 2000); *see Papp v. MRS BRO LLC*, No. 13-3183, 2015 WL 5247005, at *6 (D. N.J. Sept. 9, 2015) (citing *Farrell* and finding that "rejection of sexual advances in Title VII . . . context, especially on multiple occasions as a part of a large pattern of alleged sexual harassment, constituted protected activity."); *see also Ogilvie v. Northern Valley EMS, Inc.*, No. 07-485, 2008 U.S. Dist. LEXIS 87913, *37 (E.D. Pa. Oct. 29, 2008) ("Plaintiff's allegation that he was terminated because of his rejection of [defendant's] sexual advances does constitute a protected activity under Title VII").  The Court finds here that Plaintiff's alleged rebuffing or rejection of Cleneay's sexual advances qualifies as protected activity under Title VII.  Specifically, Plaintiff contends that in January 2019 she told "Cleneay that she was not attracted to him sexually and that they would never have an intimate relationship[,]" and prior to this she physically pushed him away on multiple occasions.  (Am. Compl. ¶¶ 52, 68, 70, 91-92.)  Thus, Plaintiff's alleged

refusal of these sexual advances and denial of an intimate relationship with Cleneay is sufficient to constitute protected activity.

Second, as to an adverse employment action, a plaintiff must allege facts to show that "a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Byrd v. Elwyn*, No. 16-02275, 2016 WL 5661713, at *5 (E.D. Pa. Sept. 30, 2016) (citing *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006)).  The Court finds that Plaintiff has alleged facts to support an adverse employment action— her termination on January 17, 2019.  (*See* Am. Compl. ¶ 93.)

Finally, as to causation, the court "will evaluate the evidence as a whole, considering factors such as temporal proximity between protected activity and the adverse employment decision, intervening hostility, or inconsistent reasons given for the adverse action." *Byrd*, 2016 WL 5661713, at *5 (citing *Farrell*, 206 F.3d at 280-81).  "An (unusually suggestive) temporal proximity can, on its own, show causation." (*Id.*)  Here, temporal proximity is likely sufficient as Plaintiff rejected Defendant around January 5, 2019, and was terminated 12 days later; moreover, Cleneay "acted cool" towards her during the intervening period.  (*See* Am. Compl. ¶¶ 91-93.)  Nonetheless, the Court notes that a plaintiff "cannot establish that there was a causal connection without some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted." *Daniels*, 776 F.3d at 197; *see also Romero v. Allstate Ins. Co.*, 3 F. Supp. 3d 313, 328 (E.D. Pa. 2014), aff'd *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444 (3d Cir. 2015), as amended on reh'g in part (Mar. 26, 2015) ("It is well established that: [a]n employee cannot establish retaliation without proving that the employer knew that the employee engaged in protected activity. Without knowledge, there can be no

retaliatory intent, and thus there can be no causal connection") (citation omitted).  Upon review of the Amended Complaint and the facts alleged therein, the Court finds Plaintiff's statement that "[she] was terminated because she had refused Cleneay's sexual advances" wholly conclusory because there are no facts identifying who terminated her, and whether they were aware she had engaged in protected activity.  (*See* Am. Compl. ¶ 94.)

Accordingly, the Court will dismiss Plaintiff's retaliation claim *without prejudice* with leave to amend.

### C. *Quid Pro Quo* Sexual Harassment Claim in Violation of Title VII and the PHRA

To succeed under a *quid pro quo* theory of sexual harassment, "a plaintiff must show that her response to unwelcome sexual advances or other verbal or physical conduct of a sexual nature was subsequently used as a basis for a decision about compensation, terms, conditions, or privileges of employment."  *Pergine v. Penmark Mgmt. Co., Inc.*, 314 F. Supp. 2d 486, 491 (E.D. Pa. 2004) (citing *Farrell*, 206 F.3d at 281-82).  "Not only must plaintiff establish that defendant's conduct was unwelcome, she must also establish a causal link between her response to the unwelcome advances and the subsequent employment decision."  *Id.* at 492; *see also Doe v. Mercy Catholic Med. Ctr.*, No. 15-2085, 2019 WL 3243249, at *15 (July 17, 2019) (plaintiff may point to evidence of hostility or repeated demands for sexual favors, evidence that plaintiff gave inconsistent reasons for termination, and evidence of close timing between plaintiff's response and the termination[.]")  It follows that Plaintiff must assert facts at the pleading stage demonstrating that the individual(s) responsible for her termination knew of her response to Cleneay's unwelcome sexual advances.  *See Daniels*, 776 F.3d at 197; *see also Romero*, 3 F. Supp. 3d at 328.

Defendants contend that "Plaintiff has not alleged any facts that Southeastern, as her employer, knew or acquiesced to Cleneay's conduct." (Mot. at 8.)  Defendants further argue that Plaintiff "does not assert that her rejection of Cleneay's advances was a factor in her termination, or that Cleneay was involved, directly or indirectly, in terminating her employment." (*Id*. at 2.) Plaintiff argues in response that  "Cleneay, who held a supervisory position over her, represented to her both explicitly and implicitly that her job would be in jeopardy if she did not submit to his sexual demands and as such, she was forced to endure verbal or physical conduct of a sexual nature in return for Cleneay's protection of her job." (Opp. at 7) (internal quotations omitted).

Plaintiff's companion claim for *quid pro quo* sexual harassment fails because the Amended Complaint is devoid of any facts supporting causation.  *See Farrell*, 206 F.3d at 281(a claim for *quid pro quo* sexual harassment contains a requirement of "cause and effect" similar to a claim for retaliation).  The Court notes that Plaintiff cannot establish causation without asserting at least some facts proving that her employer (*i.e.*, the individual(s) who affected her termination) knew of Plaintiff's response to Cleneay's unwelcome sexual advances and that this was used as the basis for her termination.  *Id.* at 282 ("[T]he employee must show that his or her response was in fact used thereafter as a basis for a decision affecting his or her [employment]."). The facts are silent as to who terminated Plaintiff, and whether Cleneay had any involvement in her termination.  Moreover, Plaintiff's contention that her "employment was terminated because she had refused Cleneay's sexual advances" is conclusory and insufficient to defeat Defendant's motion to dismiss. *See Twombly*, 550 U.S. at 555 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.") (internal citation omitted).

Accordingly, the Court will dismiss Plaintiff's *quid pro quo* sexual harassment claim *without prejudice* with leave to amend.

## V.     CONCLUSION

For the reasons discussed above, the Court will grant Defendants' Motion to Dismiss, and Plaintiff will be given leave to amend.  An appropriate Order will follow.

**IT IS SO ORDERED.**

                                                   **BY THE COURT:**

                                                   /s/ John Milton Younge
                                                   **Judge John Milton Younge**